J-S44041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
       :        PENNSYLVANIA
       :
       v.        :
       :
       :
JUSTIN W. KEARNS        :
       :
       Appellant        :    No. 540 EDA 2023

Appeal from the Judgment of Sentence Entered January 17, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004662-2021

BEFORE:    OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:        **FILED DECEMBER 30, 2024**

Appellant, Justin W. Kearns, appeals from the judgment of sentence entered on January 17, 2023, following his jury trial conviction for endangering the welfare of a child.[1] We affirm.

We briefly summarize the facts and procedural history of this case as follows. On September 11, 2020, Appellant ingested heroin and became unconscious while he was the sole caregiver for his two-year old daughter (Child) in his two-story apartment in Warminster Township, Pennsylvania,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4304(a)(1).

while Child's mother was away. N.T., 10/6/2022, at 49, 67-69, 77-81, and, 103-105; N.T., 10/7/2022, at 11. When Child's mother returned, she was locked out of the apartment, Appellant did not respond to her knocking and calling to let her in, and she could see Appellant and Child in the home. N.T., 10/6/2022, at 29-35, 49-50, and 62. After Child's mother tried unsuccessfully to get into the apartment, she called 911. *Id.* at 49-50. Police officers and emergency medical personnel responded and forcefully entered the front door to find Appellant lying with his legs on the floor and his head positioned in the corner of the couch. *Id.* at 68-73, and 98-102. Appellant was unresponsive and Child was unsupervised, not wearing pants, and wandering around the first floor of the apartment. *Id.* at 77-79, and 103-04; Commonwealth Exhibit 10. When roused by emergency responders, Appellant finally awoke, confused, and was subsequently taken to a hospital by ambulance. N.T., 10/6/2022, at 79-81, 87, 104-106.

Appellant was charged with endangering the welfare of a child and reckless endangerment. A two-day jury trial commenced on October 6, 2022. Prior to trial, Appellant moved to suppress the medical records obtained from the hospital where he was treated, arguing the search warrant used to obtain his records was not supported by probable cause; the trial court denied relief following a suppression hearing. N.T., 10/5/2022, at 8-9, 27-28, 32-34, and 37. At trial, the court permitted the Commonwealth to question the investigating officer and allowed him to read portions of the hospital records

into evidence over Appellant's objection. N.T., 10/6/2022, at 120-123; N.T., 10/7/2022, at 4-12. In addition, over Appellant's objections, the Commonwealth presented evidence from the investigating officer who testified that after Appellant awoke and stood up, the police recovered a clear plastic baggie underneath the area where Appellant was found. The Commonwealth also introduced a brief, recorded statement Appellant made during a prison telephone call to his mother six days later. N.T., 10/6/2022, at 81; N.T., 10/7/2022, at 20-25; Commonwealth Exhibit 13; N.T., 10/5/2022, at 9, 29-31, 35, and 38.

On October 7, 2022, the jury found Appellant guilty of endangering the welfare of a child, but not guilty of reckless endangerment. N.T., 10/7/2022, at 100-101. On January 17, 2023, the trial court sentenced Appellant to 42 to 84 months of incarceration. Appellant filed a timely motion to reconsider his sentence, which the trial court denied on February 1, 2023. This timely appeal followed.

Appellant raises the following six issues[2] in this appeal:

A. Was there insufficient evidence to find Appellant guilty beyond a reasonable doubt of [endangering the welfare of a child]?

B. Did the trial court err in admitting [the clear plastic baggie] which was never tested or sent to the lab for testing found near Appellant where the probative value of that evidence was outweighed by the danger of unfair prejudice to Appellant?

C. Did the trial court err in admitting an out-of-context portion of a prison telephone call where the probative value of that

---

[2] We have reordered Appellant's issues for ease of discussion and disposition.

evidence was outweighed by the danger of unfair prejudice to Appellant?

D. Did the trial court err in denying Appellant's motion to suppress medical records where there was not probable cause to support the warrant used to obtain those records?

E. Did the trial court err in admitting testimony concerning diagnoses contained in Appellant's medical records where the doctor responsible for those medical opinions was not available to be cross-examined at trial?

F. Did the trial court err in sentencing Appellant to the statutory maximum sentence for [endangering the welfare of a child] where it considered improper factors and imposed a sentence beyond what is necessary to protect the public and rehabilitate Appellant, factors that the trial court failed to consider?

Appellant's Brief at 8 (suggested answers omitted).

In his first issue presented, Appellant argues that the Commonwealth failed to present sufficient evidence "explaining how Appellant's daughter was placed in a perilous or dangerous situation [] to support" his conviction for endangering the welfare of Child. *Id.* at 15. Appellant also contends that evidence showed that Child was not unsupervised because "Appellant woke up shortly after being touched by police, indicating that Appellant was not totally unresponsive and would have been able to respond to any sort of emergency situation involving his daughter." *Id.* at 16. Appellant maintains that the Commonwealth failed to prove he was aware of circumstances that could threaten Child's welfare, because the Commonwealth's evidence merely showed that Appellant was unconscious in Child's presence but she was not exposed to any dangerous condition.

Our standard of review regarding the sufficiency of evidence is well-settled:

> We evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Importantly, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence.

*Commonwealth v. Delamarter*, 302 A.3d 1195, 1201 (Pa. Super. 2023) (internal citation and ellipses omitted). Moreover, in determining whether the evidence is sufficient to support conviction, we must consider all evidence actually admitted at trial, without consideration of whether the trial court's evidentiary rulings are correct. *Commonwealth v. Arias*, 286 A.3d 341, 350 (Pa. Super. 2022).

The Crimes Code provides that "[a] parent … supervising the welfare of a child under 18 years of age" commits the offense of endangering the welfare of a child "if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). The Commonwealth must prove: 1) that the defendant was aware of his or her duty to protect the child; 2) that the defendant was aware that the child was

in circumstances that could threaten the child's physical or psychological welfare; and 3) that the defendant either failed to act or took action so lame or meager that such actions could not reasonably be expected to protect the child's welfare. *Delamarter*, 302 A.3d at 1201; *Commonwealth v. Barkman*, 295 A.3d 721, 732 (Pa. Super. 2023).

The mere fact that a parent is intoxicated while caring for his child is insufficient to prove that he was aware that the child was in circumstances that could threaten the child's physical or psychological welfare where there is no evidence that the child was in fact subjected to a dangerous situation. *Compare Commonwealth v. Vela-Garrett*, 251 A.3d 811, 816-19 (Pa. Super. 2021) (evidence that defendant was driving under the influence (DUI) with child in car is insufficient to support endangering welfare of a child conviction absent evidence that defendant was driving unsafely) *with Delamarter*, 302 A.3d at 1204-1209 (evidence that defendant was DUI with child in car and was driving unsafely is sufficient to prove endangering welfare of a child). A mere error in parental judgment is also not sufficient to support a conviction for endangering the welfare of a child where there is no evidence that the parent had notice that the child was endangered. *Commonwealth v. Howard*, 257 A.3d 1217, 1228-30 (Pa. 2021) (evidence was insufficient to prove endangering welfare of a child where a mother placed her child in a ride-for-hire car that did not contain a child car seat where there was no evidence that she had reason to believe driver was unsafe and the record

-6-

contained no other evidence showing that mother was aware child had been placed in circumstances which threatened the child's physical or psychological safety).

The crime of endangering the welfare of a child does not require actual infliction of physical injury or proof that the child was in imminent threat of physical harm. ***Delamarter***, 302 A.3d at 1207; ***Commonwealth v. Krock***, 282 A.3d 1132, 1139 (Pa. Super. 2022); ***Commonwealth v. Wallace***, 817 A.2d 485, 491 (Pa. Super. 2002). Instead, evidence that a parent or caregiver made himself or herself unavailable or incapable of protecting a minor where obvious dangers to the child were present is sufficient to support a conviction for endangering the welfare of a child. ***Commonwealth v. Fewell***, 654 A.2d 1109, 1119 (Pa. Super. 1995) (leaving baby unattended with access to a plastic bag is sufficient to support conviction for endangering the welfare of a child); ***Commonwealth v. Nulph***, 196 WDA 2023, at 9-10 (Pa. Super. 2024) (non-precedential memorandum) (leaving two-year-old unattended on porch near swimming pool is sufficient to support endangering the welfare of a child conviction); ***see also Commonwealth v. Hoffman***, 198 A.3d 1112, 1125 n.8 (Pa. Super. 2018) (evidence that defendant consumed sleeping medications that put her in a drug-induced stupor while caring for two-year-old was sufficient to prove conduct that placed the child in danger of death or serious bodily injury).

Here, upon review of the certified record, we conclude that there was sufficient evidence to support the determination that Appellant was unconscious while he was caring for Child because he chose to consume heroin. A police officer and an emergency medical technician who were at the scene both testified that Appellant, after he awoke, admitted he snorted heroin. N.T., 10/6/2022, at 80-81, 105. This evidence, in and of itself, was sufficient evidence for the jury to find that Appellant had consumed heroin. In addition, a torn plastic baggie which made drug use a more probable explanation for Appellant's condition was found where Appellant had been lying, and hospital records diagnosed Appellant with "poisoning by unspecified narcotics, accidental" and "[a]ccidental opioid overdose." *Id.* at 81; N.T., 10/7/2022, at 11.

Furthermore, the Commonwealth presented additional evidence which showed that Appellant was unconscious for at least 35 minutes while Child was under his sole supervision. During this time, Child walked freely in the two-story apartment and Appellant was so deeply unconscious that he did not respond to loud noises when Child's mother tried to rouse him. Moreover, Appellant failed to respond when police announced their presence and shattered a glass door close upon which Appellant was found unconscious. N.T., 10/6/2022, at 29-36, 41, 72-73, 77-79, and 100-104; Commonwealth Exhibit 10. The evidence also established conditions that posed a risk of injury to Child were present and readily visible in the living room where Child

and Appellant were located. *Id.* at 78. The stairs from the living room to the second floor of the apartment were ungated and numerous plastic bags were lying on the living room floor. *Id.* at 81-86, and 88-89; Commonwealth Exhibits 5, 6, 7, 9, and 10. While Child did not suffer any physical injury from Appellant's conduct, the crime of endangering the welfare of a child does not require actual infliction of physical injury or proof that the child was in imminent threat of physical harm. Finally, as noted, the Commonwealth also introduced into evidence an excerpt of a recorded prison phone call between Appellant and his mother following Appellant's arrest, wherein Appellant admits that he overdosed with Child present. N.T., 10/7/2022, at 20-25; Commonwealth's Exhibit 13.

Appellant also argues that, because the jury found him not guilty of reckless endangerment, the Commonwealth could not prove that his conduct was "knowing" for purposes of his endangering the welfare of a child conviction. This argument fails for two reasons.

First, contrary to Appellant's contention, inconsistent verdicts do not render sufficient evidence insufficient or otherwise invalidate a conviction, unless commission of an offense of which the defendant was acquitted is an essential statutory element of another offense for which the defendant was convicted. *Commonwealth v. Baker-Myers*, 255 A.3d 223, 229-235 (Pa. 2021); *Commonwealth v. Moore*, 103 A.3d 1240, 1246-50 (Pa. 2014); *Commonwealth v. Knox*, 219 A.3d 186, 197 (Pa. Super. 2019).

Commission of the crime of reckless endangerment is not an essential statutory element of the crime of endangering the welfare of a child. The reckless endangerment verdict is therefore irrelevant to the validity of Appellant's endangering the welfare of a child conviction and cannot make the evidence insufficient to support that conviction even if the two verdicts were inconsistent. *Moore*, 103 A.3d at 1250; *Knox*, 219 A.3d at 197.

Second, the verdicts are not, in fact, inconsistent. As stated, reckless endangerment is not a lesser included offense of endangering the welfare of a child. *Delamarter*, 302 A.3d at 1205; *Commonwealth v. Martir*, 712 A.2d 327, 330 (Pa. Super. 1998). Rather, the type of risk that the Commonwealth must prove is different for the two offenses. To sustain a reckless endangerment conviction, the Commonwealth must prove "conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705; *Delamarter*, 302 A.3d at 1205; *Martir*, 712 A.2d at 329-330. In contrast, the danger that must be proved for the offense of endangering the welfare of a child is "circumstances that could threaten the child's physical or psychological welfare." *Delamarter*, 302 A.3d at 1205; *Barkman*, 295 A.3d at 732; *Martir*, 712 A.2d at 330. Accordingly, for all of the foregoing reasons, we conclude that there was sufficient evidence to support Appellant's conviction for endangering the welfare of a child and Appellant is not entitled to relief on his first appellate issue.

Appellant's next two issues challenge the trial court's evidentiary rulings, and we will examine them together. Appellant challenges the admission of trial testimony concerning the plastic baggie recovered from the area underneath where Appellant was found, as well as the admission of the redacted excerpt of the prison phone call recording between Appellant and his mother, as described in detail above. *See* Appellant's Brief at 28-31. In both of these issues, Appellant claims that the prejudice from the admission of these items of evidence outweighed their probative value. More specifically, Appellant argues that there was no evidence that the plastic bag at issue actually contained heroin or another illegal drug and that the brief phone call excerpt did not necessarily refer to the events at issue here. We disagree.

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Crosley*, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (citation omitted).

Rule 403 of the Pennsylvania Rules of Evidence provides that a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of … unfair prejudice." Pa.R.E. 403. Our review of a trial court's

decision on this issue is limited to whether the court abused its discretion. **Commonwealth v. Gallaway**, 283 A.3d 217, 222-223 (Pa. 2022). The mere fact that evidence is harmful to the defendant does not constitute unfair prejudice. **Commonwealth v. Knupp**, 290 A.3d 759, 776 (Pa. Super. 2023); **Commonwealth v. Wilson**, 273 A.3d 13, 19-20 (Pa. Super. 2022). Rather, unfair prejudice may constitute a ground for exclusion where the proffered evidence has "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, Comment; **Gallaway**, 283 A.3d at 223 (citation omitted).

Neither the testimony regarding the baggie nor the excerpt of a recorded prison telephone call tended to divert the jury's attention from the issues in this case or suggest a decision on an improper basis. Initially, we reject Appellant's suggestion that the baggie or prison call recording were unfairly prejudicial because the evidence offered minimal persuasive value. Such contentions, at bottom, attack the evidentiary weight of this evidence and do not show unfair prejudice that could support exclusion under Rule 403. **Commonwealth v. Mabus**, 300 A.3d 1057, 1070 (Pa. Super. 2023). Moreover, the telephone call excerpt admitted into evidence did not contain any reference to Appellant's imprisonment, and Appellant made no showing that the redactions distorted the meaning of the statement wherein Appellant said that he overdosed while with Child. Likewise, even if not dispositive, the

torn plastic baggie recovered from Appellant's apartment was at least probative of the cause of Appellant's intoxicated condition during the incident. Given the nature of charges lodged against Appellant, the trial court reasonably could conclude that neither piece of evidence tended to suggest a decision on an improper basis or to divert the jury's attention away from an impartial assessment of the evidence. The trial court therefore did not abuse its discretion in allowing the Commonwealth to introduce testimony that a plastic baggie was found near Appellant and to play the phone call excerpt to the jury. Accordingly, Appellant's second and third issues as set forth above lack merit.

Appellant's fourth and five issues both challenge the admission of Appellant's medical records from the hospital where he was taken after the incident. We will examine them in turn. First, Appellant contends that the search warrant used to obtain Appellant's medical records was not supported by probable cause and, therefore, the trial court erred in denying his motion to suppress those records. We disagree.

Probable cause exists for the issuance of a search warrant where, based on the totality of the circumstances set forth in the affidavit of probable cause, including the reliability and veracity of hearsay statements included therein, there is a fair probability that evidence of a crime will be found. ***Commonwealth v. Lyons***, 79 A.3d 1053, 1063–1064 (Pa. 2013); ***Commonwealth v. Fletcher***, 307 A.3d 742, 746 (Pa. Super. 2023). Here,

the affidavit of probable cause set forth the following: that the mother of a two-year-old advised police that Appellant was passed out in the apartment with the two-year-old, that police and emergency personnel broke the glass on the storm door and kicked in the door to get into the apartment, that after this forced entry, Appellant was unresponsive lying with his knees on the floor and his head in the corner of a couch while his two-year-old was roaming freely and unsupervised, that an item of suspected drug paraphernalia consistent with heroin use was found on the floor near Appellant, that Appellant regained consciousness while being treated by emergency medical personnel and admitted ingesting heroin, and that Appellant was transported by ambulance to the hospital from which the records were sought. Exhibit CS-1.[3] These facts were sufficient to show that there was a fair probability that Appellant had suffered a drug overdose and that he was treated for that event at the hospital and, therefore, sufficient to provide probable cause that evidence of a crime, *i.e.* narcotics use that caused child endangerment, would be found in the records from that hospitalization. The trial court accordingly did not err in denying Appellant's motion to suppress.

---

[3] The affidavit of probable cause also contained a reference to drug paraphernalia found in another part of the apartment, but this portion was excluded by agreement of the Commonwealth and Appellant because it had been obtained in an unconstitutional search and the trial court considered the search warrant affidavit with that portion removed in determining whether probable cause existed. N.T., 10/5/2022, at 27-28, 32-34, 37. We discern no error.

Next, Appellant posits that the trial court erred by admitting evidence contained in Appellant's medical records when the doctor responsible for those medical opinions was not available for cross-examination at trial. Appellant's Brief at 22-26. Appellant argues that the investigating officer who testified at trial, "is not affiliated in any way with [the h]ospital, has no medical background, and had no personal knowledge surrounding Appellant's hospital visit, [and] improperly testified as to various diagnosis contained within the medical reports[.]" *Id.* at 22. In sum, on this issue, Appellant concludes:

> Because the doctor who reached [medical] conclusions did not testify here, Appellant was denied the opportunity to challenge those medical opinion[s]. Specifically, Appellant was unable to challenge the doctor's qualifications, determine what information the doctor relied on—or did not rely on – in forming the opinions, or ask other relevant questions on cross-examination. Appellant's only recourse was to cross-examine the officer, who never observed Appellant [at the hospital] at any point that night, has no medical background, and only learned of this incident several days later.

*Id.* at 23-24.

Appellant's claim raises a Confrontation Clause challenge, which requires us to ascertain the primary purpose for creating the hospital records. For reasons more fully explained below, because we conclude that the primary purpose for Appellant's trip to the hospital was for the development of evidence demonstrating that he ingested drugs which could be used in a subsequent prosecution for child endangerment charges, the content of Appellant's medical records was largely testimonial in nature and the

admission of the documents at trial violated Appellant's right to confrontation.

Therefore, the medical records should have been excluded from trial.

We begin by setting forth relevant principles of our Confrontation Clause

jurisprudence. This Court has recently determined:

> Issues related to whether the admission of evidence violated an accused's rights under the Confrontation Clause are questions of law, for which our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Brown***, 185 A.3d 316, 324 (Pa. 2018). The Sixth Amendment's Confrontation Clause generally prohibits the admission of hearsay statements that are "testimonial" in nature. ***Crawford v. Washington***, 541 U.S. 36, 50-60 (2004). The [United States] Supreme Court declined to further define in ***Crawford*** what is meant by this term, but it did opine that such a statement could include the "functional equivalent" of *ex parte* in-court testimony, formalized testimonial materials, or a statement made under circumstances which would lead an objective witness to believe that it might be used at some later trial. ***See Commonwealth v. Thompson***, 314 A.3d 922, 926 (Pa. Super. 2024). Stated differently, testimonial evidence has a "'primary purpose of creating an out-of-court substitute for trial testimony.'" ***Commonwealth v. Banko***, 268 A.3d 484, 491 (Pa. Super. 2022), *quoting* ***Bullcoming v. New Mexico***, 564 U.S. 647, 669-672 (2011) (Sotomayor, J., concurring) (other citations omitted); ***See also Davis v. Washington***, 547 U.S. 813, 822 (2006) (stating that statements to police are nontestimonial when the primary purpose of the statement is to meet an ongoing police emergency; they are testimonial when the primary purpose is to establish or prove past events relevant to a criminal prosecution).

> As noted by Justice Sotomayor, whether a statement is considered to be testimonial often is determined by looking at the purpose served by that statement. ***Bullcoming***, 564 U.S. at 669. For example, in a driving-under-the-influence (DUI) prosecution where the charge is based upon the percentage of alcohol contained in one's blood, a toxicology report that identifies the alcohol percentage in the defendant's blood is testimonial because the information in the report serves to satisfy an element of the crime for which the defendant was charged, *i.e.*, the defendant's blood alcohol content (BAC). ***Thompson***, 314 A.3d at 926-927.

In such a case, it would "violate[] the Confrontation Clause to admit a toxicology report with the testimony of the custodian of records but not the laboratory technician who performed the test." *Id.* at 927. Similarly, an autopsy report compiled by a medical examiner in consultation with the district attorney has been deemed testimonial because it is designed to provide an opinion as to whether death occurred as a result of a criminal act. *Id.*

Nonetheless, if a statement is not intended to be used to prove an element of a crime, the statement may be non-testimonial.

\* \* \*

In considering whether the medical records are testimonial, we note that, generally speaking, medical records are the objective recordings of test results and the medical practitioner's observations. They are unlike an autopsy report that contains an opinion regarding the legal cause of death as resulting from an accident, homicide, or natural causes; instead, these records are a factual account of what medical practitioners did to treat the victim's injuries.

*Commonwealth v. McCullough*, -- A.3d --, 2024 WL 4271674, at *2-3 (Pa. Super. 2024).

Further, this Court has stated:

It is well settled that the Confrontation Clause applies solely to statements that are testimonial in nature. *Commonwealth v. Williams*, 103 A.3d 354, 358-359 (Pa. Super. 2014). In the context of a DUI case, forensic analyses of blood are within the "core class of testimonial statements" subject to Confrontation Clause protection. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009).

In order to determine whether a report detailing the results of a blood test is testimonial, "a court must determine whether the primary purpose [] was to establish or prove past events relevant to a later criminal prosecution." *Commonwealth v. Allshouse*, 36 A.3d 163, 175 (Pa. 2012); *see also Commonwealth v. Banko*, 268 A.3d 484, 492 (Pa. Super. 2022) (reiterating that evidence is testimonial in nature where its primary purpose was to support an arrest and "create an out-of-court substitute for trial

testimony"). However, where a blood test is administered for the purpose of medical treatment, and not "to establish nor prove past events relevant to a later criminal prosecution," that evidence is non-testimonial in nature. ***Id.***

***Commonwealth v. Dougan***, 317 A.3d 619, at *6 (Pa. Super. 2024) (non-precedential decision).[4]

For example, in ***McCullough***, ***supra***, police responded to a shooting in downtown Pittsburgh, wherein they encountered the victim laying on the sidewalk with two bullet wounds in the left side of his chest. ***See McCullough***, at *1. The Commonwealth sought to introduce the victim's medical records through the investigating police officer who was called to testify at trial. The medical records were offered to support a conviction for aggravated assault. ***Id.*** at *3 ("Because the victim did not testify, the prosecutor sought to introduce the victim's medical records and accompanying certification to establish the victim's injuries."). We ultimately determined that "the records in question [were] medical records relating to treatment given to the non-testifying victim for injuries suffered in the shooting." ***Id.*** Therefore, the records were not testimonial.

Moreover, in ***Dougan*** and ***Banko***, ***supra***, both defendants were involved in car accidents and taken to the hospital for medical treatment. In ***Dougan***, the defendant "had cuts and burns on his face and hands" following a single car accident wherein he "requested and was in need of further medical treatment" and was transported to the local hospital. ***Dougan***, at *1. While

---

[4] ***See*** Pa.R.A.P. 126(b) (This Court may cite and rely upon non-precedential decisions filed after May 1, 2019 for their persuasive value).

at the hospital, medical personnel conducted blood tests which the Commonwealth later sought to introduce at Dougan's trial for driving under the influence of alcohol – second offense. Ultimately, we recognized that "hospital personnel determined the alcohol content of [Dougan's] blood for the purpose of medical treatment, and not at the request of law enforcement" thus, "the report detailing [Dougan's blood alcohol content] was not testimonial" and, "[t]herefore, the Confrontation Clause [did] not apply." *Id.*, at *6. Similarly, in *Banko*, we determined that Banko's "blood was tested as part of his hospital treatment following an automobile accident" after he "was transported to the hospital by EMS, which was summoned in light of the fact [Banko] reported to be a diabetic and was complaining of face, neck, and back pains after driving his car off the road and into a field." *Banko*, 268 A.3d at 487. Ultimately, the *Banko* Court determined that "the primary purpose of [Banko's blood alcohol] testing was neither to establish nor prove past events relevant to a later criminal prosecution, but rather was for the purpose of [Banko's] medical treatment" and, therefore, "the [medical records] presented at trial [were] not testimonial." *Id.* at 492.

Upon review of the certified record in this matter, we conclude that the primary purpose of Appellant's visit to the hospital, together with the ensuing generation of his medical records, was to establish or prove past events relevant to a later criminal prosecution and not for the purpose of medical treatment. Here, there is no dispute that Appellant "finally awoke, confused, when touched by the emergency responders and was taken to a hospital by

-19-

ambulance." N.T., 10/6/2022, at 79-81, 87, and 104-106. According to the hospital medical records admitted at trial:

> Patient is a 34-year-old male with history of [gastroesophageal reflux disease] and drug abuse presenting emergency department after an unintentional narcotics overdose. Per EMS report, patient was found asleep on the couch with his 2-year-old child, whom he was supposed to be watching. He was hard to arouse and girlfriend called EMS. EMS brought patient here. Patient did not require Narcan or other medication. Upon time of arrival here, patient is awake, alert, oriented[, and] clinically sober. He admits to snorting fentanyl this evening. He denies injections. He denies any other drug use. He feels well and would like to go home. He denies fevers, chills, nausea, vomiting, chest pain, shortness of breath, numbness, weakness, tingling, acute traumatic injury, or any other major symptoms.

Commonwealth's Exhibit C-12, at 1. Under the differential diagnosis section of the hospital record, hospital personnel noted "accidental opiate overdose, doubt serious intracranial injury, doubt cervical spine injury, doubt other major traumatic injury[.]" *Id.* at 2. Hospital personnel further "discussed the risks of leaving" the hospital with Appellant, "believe[ing] that he ha[d] the capacity to make such a decision" but Appellant did not require any medical treatment after the preliminary evaluation. *Id.* at 3. Here, the record suggests that Appellant was in no further need of medical treatment when he arrived at the hospital. Instead, the hospital performed a blood draw in order for the Commonwealth to confirm a past event, specifically Appellant's consumption of opiates, which was clearly only relevant for later criminal prosecution. As such, the trial court erred in admitting hospital records that were testimonial in nature without first receiving testimony from the medical

personnel who administered the examinations. Accordingly, for all of the foregoing reasons, Appellant's medical records were improperly admitted into evidence.

Despite the improper admission of Appellant's medical records, we must next consider whether that evidentiary error was harmless. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Hairston*, 84 A.3d 657, 672 (Pa. 2014). Our Supreme Court has stated:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* at 671-672 (citations omitted). "[W]hen reviewing for harmless error, the appellate court considers only the uncontradicted evidence and, having done so, proceeds to determine whether that body of uncontradicted evidence was so overwhelming that the erroneous admission of the evidence could not have impacted the verdict." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 470 (Pa. 2021) (citation omitted).

Here, both a police officer and an emergency medical technician (EMT) who responded to the scene testified at Appellant's trial and opined that Appellant was intoxicated and had overdosed. Pennsylvania law provides that

-21-

"[a] police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated." ***Commonwealth v. Kelley***, 652 A.2d 378, 382 (Pa. Super. 1994) (citation omitted). Moreover,

> [i]ntoxication is a matter of common knowledge, and opinions given by lay people are permissible on the issue. ***Commonwealth v. Reynolds***, 389 A.2d 1113 (Pa. Super. 1978). However, the lay witness must have sufficient facts on which to base his opinion before he can express an opinion on another's intoxication. ***Commonwealth v. Hughes***, 389 A.2d 1081 (Pa. 1978). ***See also Commonwealth v. Summers***, 410 A.2d 336 (Pa. Super. 1979) (court concludes witness' observations of the way the person looked and the way he was walking provided sufficient factual basis for witness to conclude a person was intoxicated). The court also looks to the witness' personal knowledge and observation. ***Commonwealth v. Davenport***, 386 A.2d 543 (Pa. Super. 1978).
>
> ***Commonwealth v. Womack***, 453 A.2d 642, 648 (Pa. Super. 1982). In addition, we note that lay opinion testimony embracing an ultimate issue in a case is admissible as long as the witness perceived the events upon which his opinion is based.

***Commonwealth v. Bowser***, 624 A.2d 125, 133 (Pa. Super. 1993); ***see also Commonwealth v. Horn***, 150 A.2d 872, 875 (Pa. 1959) (citation omitted) ("Intoxication is a matter of common observation and knowledge, and because of observation, knowledge or experience, the opinions of laymen are admissible and medical opinion, while of course admissible, is not required."); ***see also Commonwealth v. McLaughlin***, 198 A.2d 419, 421 (Pa. Super. 1964) (citations omitted) ("Intoxication is a matter of common observation on which the opinions of non-experts are generally admissible [but t]he testimony of a physician is not required."). More specifically, we previously determined that "the intoxicating effects of cocaine and opiates, like the

intoxicating effects of alcohol, are more widely and commonly understood than the effects of prescription medication." ***Commonwealth v. DiPanfilo***, 993 A.2d 1262, 1267 (Pa. Super. 2010). Furthermore, this Court has found "no basis upon which to distinguish opinion testimony of drug-induced intoxication from opinion testimony of alcohol-induced intoxication where the witness is personally familiar with the effects of narcotics." ***Commonwealth v. Yedinak***, 676 A.2d 1217, 1221 (Pa. Super. 1996) (citations omitted).

In this case, Officer Joseph Santospago, a member of the Warminster Township Police Department, testified at trial. Officer Santospago testified that he had experienced "[n]umerous drug arrests, self-initiated and also calls for service in regard to drugs [and] numerous calls related to drug overdoses," estimating that he had been involved in approximately 25 to 30 drug investigations. N.T., 10/6/2022, at 65 and 67. When investigating a potential overdose victim, Officer Santospago stated that he typically looks for drug paraphernalia and narcotics at the scene "to find out what they used." ***Id.*** at 66. He testified that heroin is typically stored in very small plastic bags. ***Id.*** at 66. In responding to the incident at issue, Officer Santospago found a "clear plastic baggie" underneath Appellant "known" from his experience for "snort[ing] narcotics" wherein the user "can put [the bag] in [his] hand and close [his] fist so [others] wouldn't be able to see it." ***Id.*** at 81. Officer Santospago testified that Appellant was unresponsive, did not respond to knocking on a glass door, and when the police forced entry into the residence, Appellant still did not wake up. ***Id.*** at 73. Officer Santospago touched

Appellant "to wake him up, and then he woke up and became alert." *Id.* at 79. Officer Santospago testified that, based upon his training and experience, Appellant displayed common signs of someone waking up from overdosing, including "being confused, distraught, kind of looking [] like he didn't know what was going on." *Id.* at 80. Responding EMT, Donald Rogers, testified similarly. EMT Rogers stated that, based upon his training and experience, Appellant's actions were consistent with someone who had overdosed. *Id.* at 105 ("When someone wakes up from a drug overdose, it's very typical for them to be unaware of what's going on; agitation is very, very common. Unresponsiveness with a drug overdose is also very common."). Ultimately, EMT Rogers opined that Appellant "was exhibiting signs and symptoms of a possible opioid overdose." *Id.* at 112.

However, more importantly, both Officer Santospago and EMT Rogers testified that Appellant admitted to Rogers that "he snorted heroin." N.T., 10/6/2022, at 81 (Officer Santospago stated Appellant "advised [the EMT] that he snorted heroin."); *id.* at 105 (EMT Rogers testified, "The patient did admit to drug usage of snorting one bag of, I believe, heroin, and that's in the [ambulance] medical chart."). Appellant never challenged these admissions or argued that they should have been suppressed from trial. Moreover, while the police body camera footage did not capture an explicit admission, the

video footage played at trial ends as Appellant audibly admits that he snorted heroin before entering the ambulance.[5]

As such, we conclude that the body of uncontradicted evidence in this case was so overwhelming that the erroneous admission of Appellant's medical records could not have impacted the verdict. After he was revived by first responders, Appellant admitted to the EMT that he had ingested heroin. At trial, the responding police officer confirmed Appellant's confession to the EMT. Moreover, both the responding officer and the EMT opined that, based upon their training, experience, and personal observations of Appellant,

---

[5] Upon review of the body camera footage identified as Commonwealth Exhibit C-10, Officer Santospago and Appellant can be heard having the following conversation on the way to the ambulance:

Officer: How often do you use it?

Appellant: I just started using.

Officer: Why'd you start? Why would you do something crazy like that?

Appellant: I just lost my job.

Officer: Yeah, but why the hell would you start heroin?

Appellant: Because I did it when I was younger, when I was younger, and I haven't done it in 10 years.

Officer: Alright, so it's the first time ….

Appellant: In 10 years. 10 years.

Officer: Well, that's a dumb choice. We're going to hop up in [the ambulance] and have a seat in that chair until we get the bed ready for you.

Commonwealth Exhibit C-10, at 3:41-4:03.

Appellant's actions were consistent with a person who overdosed on opiates. The jury also observed Appellant's actions when the footage from the police body camera was played as an exhibit at trial. Because intoxication is a matter of common observation and knowledge, medical records simply were not required. Additionally, the small bag found under Appellant, which the responding officer testified was consistent with snorting heroin for personal use, provided additional circumstantial evidence that Appellant had recently consumed opiates. Finally, while Appellant argues that the prison recording was prejudicial, outweighed its probative value, and should not have been admitted at trial (an argument we rejected earlier), Appellant agrees that the excerpt played for the jury contains a statement by Appellant that he overdosed. *See* Appellant's Brief at 30 ("Here, the trial court permitted the Commonwealth to publish a portion of a prison phone call where Appellant stated that he overdosed…. Despite the fact that Appellant's statement is related to the Commonwealth's theory of the case, the portion of the call does not reference any date, place, or time connecting Appellant's statement giving rise to the criminal charges."). The uncontradicted evidence of Appellant's voluntary intoxication which endangered the welfare of Child while in his sole care was so overwhelming in this case that the erroneous admission of Appellant's medical records could not have impacted the verdict, and a new trial is not warranted. Accordingly, we affirm Appellant's conviction.

Finally, we address Appellant's contention that the trial court abused its discretion by imposing the statutory maximum sentence for endangering the

welfare of a child. Appellant's Brief at 31-26. He claims his sentence of 42 to 84 months of incarceration is manifestly excessive. *Id.* at 32. More specifically, Appellant argues that the trial court failed to consider his rehabilitative needs and the safety of the community and impermissibly relied upon "Appellant's alleged failure to cooperate with Bucks County Children and Youth [Services (CYS)]." *Id.* at 35.

This claim implicates the discretionary aspects of sentencing and pursuant to statute, Appellant does not have an automatic right to appeal. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court explained:

[t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

Here, Appellant has met the first three requirements as set forth above. Moreover, we conclude that Appellant's challenge raises a substantial question. *See Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019) (finding appellant's claim that trial court failed to consider sentencing factors and the sentence was excessive raised a substantial question); *see also Commonwealth v. Allen*, 24 A.3d 1058, 1064–1065 (Pa. Super. 2011)

("This Court has recognized that a claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question."). We therefore turn to the merits of the claim.

This Court has stated:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review.

Nevertheless, the trial court's discretion is not unfettered. When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines.

*Commonwealth v. Coulverson*, 34 A.3d 135, 143–144 (Pa. Super. 2011) (cleaned up).

Moreover,

whether or not there is a departure from the guidelines, a court imposing sentence for a felony or misdemeanor shall make part of the record, and disclose in open court during sentencing, a statement of the reasons for the sentence. The court is not required to parrot the words of the Sentencing Code, stating every

factor that must be considered under Section 9721(b). However, the record as a whole must reflect due consideration by the court of the statutory considerations enunciated in that section.

*Id.* at 145 (citation and original brackets omitted). Where the sentencing court has the benefit of a pre-sentence investigation report (PSI), we presume it was aware of all appropriate sentencing factors and such consideration satisfies the requirement that the court place its reasoning on the record. *See Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 26 (Pa. Super. 2017) (citation omitted).

An appellate court shall vacate a sentence and remand the case to the sentencing court if, *inter alia*, "the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines [erroneously or] the sentencing court sentenced within the sentencing guidelines[,] but the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(1-2). An appellate court should also vacate a judgment of sentence and remand a case "if the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). "In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." 42 Pa.C.S.A. § 9781(c).

Upon review of the certified record and applicable law, we discern that the trial court did not abuse its discretion in sentencing Appellant. Initially, we note that the trial court had the benefit of a PSI report, so we assume that the trial court was aware of all of the appropriate factors when sentencing

him. *See* N.T., 1/17/2023, at 24 ("Your Honor, the PSI is very, very detailed."); *see also id.* at 35 ("You insist, even when they're writing this [PSI report] that you did not overdose, that you were just sleeping."). At sentencing, the trial court also considered testimony from Appellant's girlfriend and mother of Child and a letter from her cousin. *Id.* at 18-23. The trial court considered the PSI report and sentencing guidelines and, ultimately, determined that an aggregated range sentence of 42 to 84 months was appropriate. *Id.* at 31 and 38. The trial court noted Appellant's adult criminal history included "nine arrests, five convictions, 11 commitments, and a violation of probation and four violations of parole." *Id.* at 31. While imprisoned, Appellant consistently engaged in misconduct. *Id.* at 36 ("[Y]our misconducts when you're in jail [--] you're getting five [to] seven misconducts every time."); *see also id.* at 11-17 (discussing two specific incidents of recent prison misconduct in October 2022). The trial court further recognized that a prior judge told Appellant to receive inpatient drug treatment, which he refused. *Id.* at 32. Appellant was also "ordered to have no unsupervised visitation with [Child]" but was arrested in this matter while she was alone in his care. *Id.* Appellant later refused to cooperate with CYS. *Id.* at 33. Ultimately, the trial court stated that Appellant had not taken responsibility for endangering the welfare of Child:

> I've reviewed the nature and circumstances of the crime and the history, character and condition of [Appellant]. I believe that there is an undue risk that Appellant will commit another crime. I believe that any lesser sentence would depreciate the seriousness

of this crime, and I believe that the defendant is in need of correctional treatment[.]

*Id.* at 38. Further, in its subsequent opinion, the trial court noted that "throughout the sentencing proceeding, [Appellant] answered every question with an excuse[, lack[ed] accountability, fail[ed] to take **any** responsibility for his actions, and [found] his attitude demonstrate[d] a continuing disrespect for the law and authority." Trial Court Opinion, 6/8/2023, at 17 (emphasis in original). Upon review, we discern no abuse of discretion. The trial court clearly considered the protection of the public, the gravity of the offense in relation to impact on victim and community, and the rehabilitative needs of Appellant and provided ample reasons on the record for its imposition of sentence. Accordingly, Appellant's challenge to the discretionary aspects of his sentence fails.

Judgment of sentence affirmed.

Judge Nichols joins this Memorandum.

Judge Colins files a Concurring and Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2024